It's our position before you today that the Commission's finding that the plaintiff's accident did not arise out of and in the course of his employment was not against the manifest way to the evidence and should not have been reversed by the circuit court. It's well settled that for a traveling employee's injury to arise out of in the course of his employment the conduct at the time of the injury must be both reasonable and foreseeable by the employer. This is a question of fact for the Commission and instead of reviewing the decision to if there was sufficient factual evidence to support the finding the circuit court rejected and disregarded the inferences made by the Commission and instead drew its own in reversing. Now we believe that there is more than sufficient factual evidence in this case to support the Commission's determination that the plaintiff's actions were not reasonable and foreseeable. It's clear from the testimony and arbitration both from the plaintiff and from his supervisor Mr. Jeffrey Stringer that at no time was the plaintiff ever specifically instructed or told to make any repairs to the drywall at the defendant's lease station house at any time during the four-month period between when the hole was created and between the date of the accident. Further and... So he made the hole in the wall? That's correct. Plaintiff made the hole in the wall, testified four months prior to the date of accident. So he deviates, he stops off at his house right in the way that gets the materials? That's correct. Your position is that wouldn't be a deviation? Our position is that the deviation wouldn't be reasonable and foreseeable by the employer. And I think that's supported by the most important fact, and that is that the plaintiff was specifically instructed by his supervisor, Jeffrey Stringer, on the date of the accident to return to the defendant's station house after making a drop at the hospital. This testimony by Mr. Stringer was not rebutted by the plaintiff. Return to the station house without stopping anywhere? Correct. According to the testimony, it was, you know, he was asked, you know, did you give him any specific instructions on the day of the accident? And he said, yes, I instructed them to go back to the station house to perform maintenance on the vehicle after the drop at the hospital. Now, instead of doing this, the plaintiff stopped at his house and got the drywall materials. Wasn't there testimony in the record that the paramedics frequently stopped off at the house sometimes on the way back to have lunch there and then go back to the station house? That's correct. They are allowed to run errands during their shifts, whether it be for lunch or to obtain sundries or prescriptions or, you know, even cleaning supplies. So why wouldn't that apply in this case? I think because the plaintiff had specific instructions from his boss to go from the station house to the hospital. And, you know, anybody that has a boss has to follow rules and instructions. And on this date, the plaintiff had an instruction to do something, and he didn't do it. And it's our position that an employee's disregard and failure to obey a specific instruction from the supervisor cannot be found to be seen as reasonable and, excuse me, foreseeable conduct by the employee. Well, he wasn't on the way back to the station house, was he? Pardon? He wasn't on the way back to the station house. He just stopped off at his house and was going back to the station house, right? That's correct. But the deviation to his home took him out of that course. So the boss says, I want you to go right from the job site to the station house and do not stop off at your house? That was not his testimony. His testimony was just go from point A to point B. And instead, there's no evidence in the record that the plaintiff said, okay, I'll do that, but I'm going to stop at home first. Was there evidence in the record that suggests that they were aware that their employees made deviations periodically and they did nothing about it? Certainly. Certainly. So then why isn't his deviation reasonable and foreseeable? I think it hinges on the instruction that he received from his boss. Which was what? Pardon? Which again was? To go to the station house to perform maintenance on the vehicle after the hospital drop. And that, according to the record, was the end of the conversation. Well, there's an argument to be made, I assume, that if indeed this was normal practice, that if there was an expectation there'd be no deviation, you'd make the affirmative statement. And by the way, don't stop at going anywhere else. I think on the flip side, he could have also said, okay, I'm going to stop home real quick and then we'll be there. Since there was an instruction to go somewhere for a specific purpose, not only go from the hospital back to the station house, but go to the station house to perform maintenance on the vehicle. What we're saying is this again. You're testably, if not directly acknowledging, there was this pattern that had developed in paramedics and it was known to the supervisors would occasionally stop off at home during the course of the day, correct? That was known. That's correct. So you're saying in this case, wherever you go, but aha, in this case, the supervisor told him to go from the job site to the station house. That's correct. But if the pattern in the course of conduct and it was accepted practice to stop off at your house and somebody says when you leave there, return to the station house, if you don't specifically tell them not to stop off at home, why wouldn't the normal pattern still apply, I think is the question. Well, I think the answer to that is because of the specific instruction and the failure to obey it, he didn't ask or make any statement that he was going to deviate. I think it doesn't matter where he was going, whether it would be to home or to the drugstore, if he would have said, all right, boss, you say go from point A to point B, but I'm going to stop off first. There's no evidence that in the past that employees would not respond or be mindful to instructions by their employer. The record just reflects that they're known to deviate during their shifts. Do we know whether they made a deviation after they were instructed to do a certain thing by their employer? I'm sorry? Do we know if they made the deviations after they were instructed to do certain things by their supervisors? We don't. We don't. We don't. Did anybody ask him that question? I don't recall. I don't believe so. But I think the inference could be made that these deviations are made throughout the course of employment during the day without specific instruction to do otherwise. Why is the inference to be made to that? How do we know that? Why would we know that? We don't know that because nobody testified to that at trial. So why do we infer the opposite? Because that testimony, that there was an instruction to do something specific on that particular day, is all we have to know. And he was doing that, wasn't he? Wasn't he on his way back? Well, not once he went home he wasn't on his way back. Once he went home, he had deviated from the course of employment in the face of direction by his employer at the time that he sustained the action. Which was just simply to come back to the station, right? Correct. Just based on what you're saying here, it sounds like you're not putting forth much of an argument that the commission seemed to latch onto, which was the reason for needing to stop by the house to pick up these repair materials that the claimant himself had caused the damage to the wall. Do you agree that that's not relevant to the analysis here? No, I think that is relevant to the analysis here. And what the commission relied on in support of their finding was the Hoffman case, which I think is almost directly on point to what we have here today. In that case, the employee was injured when she went to go buy pens and seating for a meeting at her house after a general discussion with her boss. In that case, the court held that the acts of going to buy these materials weren't reasonable and foreseeable by the employer since there was evidence that the there was no urgent and immediate necessity for the pens and the same would go for the seating. But that seems to go to his point. We're getting hung up on the majority of the commission felt there was no particular urgency or need to pick up the repair materials on that particular day or time. Does that have anything to do with a deviation? Whether or not there was a compelling need to make the deviation really doesn't have anything to do with whether or not the deviation was reasonably foreseeable, does it? Well, no, not necessarily. Not necessarily. The reason that he stopped off the house shouldn't be the controlling factor, should it? It shouldn't be the controlling factor. But I think the bottom line is that the deviation he made is not reasonable and foreseeable by the employer because it was in direct contradiction to a demand or an instruction that was given to him by his employer. Well, he himself claimed he made the hole in the wall. He did. Do we know why that was done? He got upset during a Bears game was his testimony four months prior. And I don't know about the year in question here how good the Bears have been in November. But is it really relevant that he made the hole in the wall? Well, it's certainly not part of his job duties to make holes in the wall. And I wasn't injured making a hole in the wall. I'm sorry? He wasn't injured making a hole in the wall. No, he was not injured making a hole in the wall. But after four months of this hole being in the wall, nobody ever asked him to make it to make it right. We could debate round and round. Your position is, as I understand it, tell me if I've missed it. Yes, you recognize that under the traveling employee, there was a policy that he developed formally or informally that a paramedic could stop off at the house on the way from the job site during lunch. You're saying that would carry the day, perhaps. But since the supervisor directly told him to go from point A to point B, then logically that should override this informal policy. Is that the essence of your position? Absolutely. OK. Absolutely. I mean, I think it's reasonable and foreseeable for your employees to follow your directions. And when they don't do that, I don't think that's reasonable and foreseeable. And I don't think that he had returned to the courts of employment at the time of his accident. Thank you, counsel. Good afternoon. In police court, my name is Jason Esmond. I'm here on behalf of the plaintiff, Mr. Scott Hinkle. Initially, I think the testimony was actually when the hole was created, the plaintiff was excited over a bear's touchdown. Oh, OK. Either way, for whatever reason, he accidentally made this hole in the wall. Not out of frustration, you're saying? I don't think it was frustration. It was actually excitement. But it was accidentally made. He testified he was there for four months, that he had done a different shift at this people were giving him a hard time. And so when the supervisor, a different supervisor, Mr. Kirchbaum, came up to him and looked at the hole, he told them, him, I'm going to get it fixed. I promise I'll fix it. Our position is that this creates acquiescence that the hole is going to be repaired. And that plaintiff felt responsibility and then did it. I don't think that he disputes that. And you recognize that the Traveling Employee Doctrine. Can you address head-on his argument that even assuming that ordinarily he'd be entitled to stop off at home and that would be a reasonable and foreseeable deviation. In this case, he was under the specific direction and request of order of the supervisor to go from point A to point B. And by stopping at home, he deviated from the instructions of the supervisor. And that should trump the general policy. I can. The testimony at the time of hearing was that he was supposed to return to the station for vehicle repairs. It was plaintiff's testimony for repairs of the vehicle or cleaning, whatever. They're doing maintenance on the vehicle, the ambulance. Plaintiff testified that that's what he was doing, that he was making his drop off. And then he was returning for the maintenance. There is no testimony that was provided that he had to stop without making any deviations at all. Supervisor said, and by the way, don't stop at home for lunch. That was not the testimony. There was nothing provided that plaintiff was reprimanded or disciplined for having made that stop. He recovered from his injury, returned to work. There's no indication that he was ever, he wasn't terminated because he made this unacceptable deviation. There wasn't any indication that he was ever reprimanded at all. Their general practice is that they're able to make these steps. That's testified by plaintiff. It's testified by Mr. Stringer. They can make stops to get lunch, to get medicine, to even pick up cleaning supplies for the station. In this case, he made a stop that, that we, there's no way to, to classify this as a personal deviation. There's no benefit that the plaintiff was getting out of making the stop. The only benefit is to the employer. Did you try this case before the arbitrator? We did try the case. What exactly, could you tell us specifically, to the best of my recollection, quoting exactly what the supervisor said to the claimant that he says prompts the general policy? My, my recollection was he was told to return to the station after making this drop off for maintenance of the vehicle. Just return to the station? Just return to the station, which is what plaintiff testified he was doing. Though he did make his, his small, insubstantial deviation, which is the policy which he testified he had done with multiple partners for multiple years that he worked there. There's never any, any indication that, that this was a, an urgent need that he had to get to the station immediately, that there was any kind of time limit on it. And the arbitrator heard this testimony. The arbitrator heard this testimony about returning the vehicle. He didn't include it in his opinion, didn't seem to either give it any kind of weight that this was something that was a direct and obvious order that he returned without any deviations at all. The arbitrator, the person who actually heard the testimony and weighed the apparently didn't find that to be a substantial testimony. So your argument is very simple, is that there was this policy at the time you stopped off at home, he was engaged in conduct that was reasonable, foreseeable, and should have been anticipated by the employer. And since he didn't give them specific directions to go from A to B and not to stop off at the house, he followed the standard ongoing policy and therefore he should be entitled to recover. Yes. And based on their standard ongoing policy, I'm not sure that even if he were directly told to come back immediately to the station, that it would be completely unreasonable or unforeseeable. But he wasn't told that specifically. He was not told that specifically. He was not stopped off at home at any time. He was not. Is the extent of the deviation relevant? Oh, definitely. I think if you're looking at the Cox decision, which was also recently decided, they determined it was a personal deviation in that case. Even a personal deviation, if insubstantial, doesn't take you out of the course of your employment. In this case, it's not a personal deviation. This is a work-related deviation. And he testified that his deviation was less than a tenth of a mile from his direct route back to the station. It would have taken two minutes, or under two minutes, had he not fallen and broken his ankle. So this is very clearly, and under Cox, would be an insubstantial deviation. For which, at the time that he fell, he was also returning to his course of employment. Would the case be stronger, given that you said what the testimony of the supervisor was, was that, I want for maintenance of vehicles, and that he stopped by his home to pick up things related to maintenance of the vehicle? I don't think it would necessarily change it. I think, you know, based on the testimony, I don't think he would have been outside of his course of his employment if he stopped home for a sandwich or a bottle of water. Those things were accepted. They were anticipated. It was reasonably foreseeable that he would make a stop at home. He happened to be picking up things that were purely for work-related purposes. So you're saying that doesn't even matter? I don't think it really does. I think he was at a place where he was reasonably and foreseeably expected to be, even during that trip. And he fell as a traveling employee. It's a compensable injury. Thank you. Counsel, you may reply. I might note, we have a council table for you to sit at. Well, thank you. You should be seated at a council table at all times. You're not addressing the Court. All right. A question shouldn't drive you further back into the Court. Thanks, Your Honor. I appreciate that. If I can cite the record to the arbitration in regard to your question to Mr. Esmond about the exact testimony of Mr. Stringer. Starting on page 81 on the record, the question is, had you given Mr. Hinkle or his partner the time, at the time, any specific instructions on where to go after making the drop-off? It says, I advised them that once they had cleared from the call, they were to report to our main office to do their vehicle maintenance, clean their vehicle, and stuff. Had you given Mr. Hinkle permission to stop by his home during the shift on February 29, 2008? No, I had not. Did you know why Mr. Hinkle went to his home? No, I did not. So your instruction to Mr. Hinkle, if I'm correct, was to go to the main station, not the west side station, which is the location of the hole. And that's correct. So while there is a general practice to run errands during the shift, there was a specific instruction in this case to go from point A to point B. And if I could just address the Cox case that counsel brought up. I think that it's distinguishable from this case in that this Court found in Cox that the employee had re-entered the course of his employment because he was back on the way home, is the way I interpreted it. Whereas in this case, Mr. Hinkle had not even returned to the ambulance yet, to return to the roadway to the course of his employment. I think for those to be analogous, you would have needed to see, for instance, the ambulance back on the road at the time of the accident when the injury occurred. Did the employee need to have employer approval for that general practice? I'm sorry? Did the employee have to have specific approval by the employer for that general practice? Of stopping on deviations? Yeah. No. I think the testimony would say that they were allowed to make general runs during their 24-hour shifts. But the testimony in this case is to the contrary, that they had specific instructions otherwise. And he could not, based on that instruction, I don't think it could be reasonably foreseen for him to have been in his driveway at that time. I think he was to be from point A to point B. There was no need to stop at home to pick up the drywall. He didn't bust it the day before. It was four months prior. Nobody ever asked him to fix it. In fact, when he came back from his injury, I think in June of that year, so four months after the accident, it still wasn't fixed. So there wasn't any urgent need or necessity like in the Hoffman case for this to be done. And we strongly believe that the commission's decision was well-based and consistent with Manifest Way's evidence. Thank you. Thank you, Counsel Bullock. This matter will be taken under advisement. Written disposition shall issue.